UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

VIRGINIA DAUSMAN FULLER,

                              Plaintiff,

v.                                                            5:14-CV-0472

CAROLYN W. COLVIN,                                            (GTS/TWD)
ACTING COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

_____

APPEARANCES:                          OF COUNSEL:

OLINSKY LAW GROUP                     HOWARD D. OLINSKY, ESQ.
*Counsel for Plaintiff*
300 S. State Street
Ste. 420
Syracuse, NY 13202


HON. RICHARD S. HARTUNIAN             MONIKA K. CRAWFORD, ESQ.
United States Attorney for the        Special Assistant United States Attorney
Northern District of New York
*Counsel for Defendant*
Room 218
James T. Foley U.S. Courthouse
Albany, NY 12207


OFFICE OF GENERAL COUNSEL             STEPHEN P. CONTE, ESQ.
Social Security Administration        Chief Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## <u>REPORT AND RECOMMENDATION</u>

This matter was referred to the undersigned for report and recommendation by the

Honorable Glenn T. Suddaby, United States District Judge, pursuant to 28 U.S.C. § 636(b) and

Northern District of New York Local Rule 72.3. This case has proceeded in accordance with

General Order 18 of this Court which sets forth the procedures to be followed when appealing a

denial of Social Security benefits. Both parties have filed briefs. Oral argument was not heard.

For the reasons discussed below, it is recommended that the case be remanded to the

Commissioner for further proceedings consistent with this report and recommendation.

## I.     BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was fifty-three years old at the time of the hearing. (T. at 49.[1]) She was a part-

time bookkeeper at her church. (T. at 65.) From February 2000 to July 2000, Plaintiff had a

seasonal, part-time job with the Census Bureau as an Operational Supervisor. (T. at 64.) From

2000 to 2006, Plaintiff worked for New York Life as a Financial Services Professional. (T. at

61.) She had to travel to clients and carry briefcases with her, causing her to develop "more

issues with [her] neck and [her] back." (T. at 62.) From April 2006 to May 2009, Plaintiff

worked at M&T Bank as a personal banker. (T. at 61.) In September 2009, she tried to return to

work at M&T Bank as a personal banker. (T. at 55-56.) After about a month at that job, she was

no longer able to continue full time work due to pain in her leg from sitting and her issues with

heavy lifting. (T. at 55-59.) Plaintiff continued to work part-time until November 2009. (T. at

56.) Currently, Plaintiff is the financial chairperson at her church, where she oversees the

bookkeeper and the financial secretary. (T. at 92.) She alleges disability due to her adrenal

---

[1]         The administrative Transcript ("T.") is found at Dkt. No. 10. Page numbers in
citations to the Administrative Transcript refer to the Bates stamped page numbers on the bottom
right of the original document rather than to the page numbers assigned by the Court's electronic
filing system.

insufficiency, chronic fatigue immune deficiency syndrome, fibromyalgia, arthritis, degenerative disc disease, hypothyroidism, migraine headaches, and multiple chemical and environmental sensitivities.  (T. at 212-16.)

Plaintiff applied for disability insurance benefits and Supplemental Security Income ("SSI") on November 4, 2010.  (T. at 24.)  The application was denied on February 25, 2011.  *Id.*  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  *Id.*  The hearing was held on July 11, 2012.  *Id.*  On September 18, 2012, the ALJ issued a decision finding that Plaintiff was not disabled.  (T. at 21.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on March 11, 2014.  (T. at 1.)  Plaintiff commenced this action on April 24, 2014.  (Dkt. No. 1.)

## II.    APPLICABLE LAW

### A.    Standard for Benefits

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A) (2006).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§ 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social Security Administration ("SSA") promulgated regulations establishing a five-step sequential evaluation process to determine disability. 20 C.F.R. § 416.920(a)(4) (2013). Under that five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014.) "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the defendant-Commissioner at the fifth step to prove that the plaintiff-claimant is capable of working. *Id.*

**B.     Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision.

*Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g) (2012); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.  *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010);[2] *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more than a mere scintilla" of evidence scattered throughout the administrative record.  *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229

---

[2]      On Lexis, this published opinion is separated into two documents.  The first is titled *Roat v. Barnhart*, 717 F. Supp. 2d 241, 2010 U.S. Dist. LEXIS 55442  (N.D.N.Y. June 7, 2010).  It includes only the district judge's short decision adopting the magistrate judge's report and recommendation.  The second is titled *Roat v. Comm'r of Soc. Sec.*, 717 F. Supp. 2d 241, 2010 U.S. Dist. LEXIS 55442 (N.D.N.Y. June 7, 2010).  It includes only the magistrate judge's report and recommendation.  Westlaw includes both the district court judge's decision and the magistrate judge's report and recommendation in one document, titled *Roat v. Barnhart*, 717 F. Supp. 2d 241 (N.D.N.Y. 2010).  The Court has used the title listed by Westlaw.

(1938)).  "To determine on appeal whether an ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining the evidence from both sides,

because an analysis of the substantiality of the evidence must also include that which detracts

from its weight."  *Williams*, 859 F.2d at 258 (citations omitted).  However, a reviewing court

cannot substitute its interpretation of the administrative record for that of the Commissioner if

the record contains substantial support for the ALJ's decision.  *Blalock v. Richardson*, 483 F.2d

773, 775 (4th Cir. 1972); *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## III.   THE ALJ'S DECISION

The ALJ found that Plaintiff has not engaged in substantial gainful activity since May 4,

2009.  (T. at 26.)  The ALJ also found that Plaintiff has the following severe impairments:

fibromyalgia, degenerative disc disease of the lumbar and cervical spine, and adrenal

insufficiency.  *Id*.  He found that Plaintiff does not have an impairment or combination of

impairments that meets or medically equals the severity of one of the listed impairments in 20

C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings").  (T at 29.)  He found that Plaintiff has

the residual functional capacity ("RFC") to perform light work as defined in 20 § C.F.R.

404.1567(b) in that she can lift and/or carry twenty pounds occasionally and ten pounds

frequently, stand and/or walk for six hours in an eight-hour workday, and sit for six hours in an

eight-hour workday.  *Id*.  He found she can occasionally engage in postural activities, which

include climbing, balancing, stooping, kneeling, crouching, and crawling and that she should

avoid concentrated exposure to respiratory irritants.  *Id*.  He found Plaintiff is unable to perform

any past relevant work and, when considering Plaintiff's age, education, work experience, and

RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can

perform.  (T at 33.)  Thus, the ALJ found Plaintiff not disabled.  *Id*.

## IV.     THE PARTIES' CONTENTIONS

Plaintiff claims that the ALJ erred by:  (1) failing to obtain the testimony of a medical

expert with regard to whether Plaintiff's impairments medically equaled one of the Listings; (2)

affording only "limited weight" to the opinions of Plaintiff's treating physician; (3) failing to

apply the appropriate legal standards when assessing Plaintiff's credibility; and (4) failing to

obtain the testimony of a vocational expert in light of Plaintiff's non-exertional limitations.  (Dkt.

No. 16.)

Defendant contends that the ALJ's decision applied the correct legal standards and is

supported by substantial evidence and thus should be affirmed.  (Dkt. No. 21.)

Although Plaintiff raises several issues, including the ALJ's failure to obtain the

testimony of a medical expert and a vocational expert, the Court will only discuss the credibility

issue and the treating physician rule as they relate to the RFC determination because remand is

warranted on those issues alone. (Dkt. No. 16 at 1.)

## V.     DISCUSSION

### A.     Credibility Evidence and the RFC Determination

A claimant's RFC is the most he can do despite his limitations.  20 C.F.R. §§

404.1545(a)(1), 416.945(a)(1).  Ordinarily, RFC is the individual's maximum remaining ability

to do sustained work activities in an ordinary work setting on a regular and continuing basis, and

the RFC assessment must include a discussion of the individual's abilities on that basis.  A

regular and continuing basis means eight hours a day, for five days a week, or an equivalent work schedule. *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quotations omitted)).

It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion. 20 C.F.R. 404.1546(c) (2014). In determining RFC, the ALJ can consider a variety of factors including a treating physician's or examining physician's observations of limitations, the claimant's subjective allegations of pain, physical and mental abilities, as well as the limiting effects of all impairments even those not deemed severe. 20 C.F.R. § 404.1545(a) (2014). Age, education, past work experience, and transferability of skills are vocational factors to be considered. *Martone v. Apfel*. 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999). Physical abilities are determined by evaluation of exertional and nonexertional limitations. Exertional limitations include claimant's ability to walk, stand, lift, carry, push, pull, reach, and handle. 20 C.F.R. §§ 404.1569a(a), 404.1569a(b), and 416.969a(a) (2014). Nonexertional limitations include mental impairments and difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching. *Id*.

The RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations. *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004) (citation omitted). In assessing RFC, the ALJ's findings must specify the functions a plaintiff is capable of performing; conclusory statements regarding plaintiff's capacities are not sufficient. *Roat,* 717 F. Supp. 2d at 267 (citation omitted). RFC is then used to determine the particular types of work a claimant may be able to perform. *Whittaker*, 307 F.

Supp. 2d at 440.

The ALJ found that Plaintiff was not credible with regard to her subjective allegations of pain, and the limiting effects of her impairments because objective medical evidence did not support the existence of limitations greater than the RFC as determined by the ALJ. (T. at 31.) Accordingly, the ALJ rejected Plaintiff's testimony that her physical impairments and pain interfere with her ability to sit for more than one hour, lift objects greater than fifteen pounds, and stand for more than ten minutes. *Id.*

Plaintiff alleges that the ALJ did not properly evaluate her credibility according to the applicable legal standards. (Dkt. No. 16 at 14.[3]) Defendant argues that the ALJ properly evaluated Plaintiff's credibility by reviewing Plaintiff's subjective allegations and finding them not credible. (Dkt. No. 21 at 10.) For the reasons stated below, the Court finds that the ALJ's sole reliance on an absence of objective medical evidence in determining Plaintiff's credibility constitutes legal error requiring remand. (T. at 29-32.)

The Court reviews an ALJ's findings of fact under a substantial evidence standard. "It is the function of the [Commissioner], not the reviewing courts, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Aponte v. Sec'y, Dept. of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (citation and internal punctuation omitted). In making a credibility determination, the hearing officer is required to take the claimant's reports of pain and other limitations into account. To satisfy the substantial evidence rule, the

_____

[3]    Citations to page numbers in the parties' respective briefs (Dkt. Nos. 16 and 21) refer to the page number in the brief rather than to the page numbers assigned by the Court's electronic filing system.

ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. 20 C.F.R. § 404.1529; *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010); Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *5 (SSA 1996). The ALJ is required to consider all of the evidence of record in making his credibility assessment. *Genier,* 606 F.3d at 50 (citing 20 C.F.R. §§ 404.1529, 404.1545(a)(3)). First, the ALJ must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms. SSR 96-7p. This finding does not involve a determination as to the intensity, persistence, or functionally limiting effects of the claimant's pain or other symptoms. *Id.* If no impairment is found that could reasonably be expected to produce pain, the claimant's pain cannot be found to affect the claimant's ability to do basic work activities. *Id.*

The ALJ must consider all evidence of record, including statements the claimant or others make about her impairments, her restrictions, daily activities, efforts to work, or any other relevant statements the claimant makes to medical sources during the course of examination or treatment, or to the agency during interviews, on applications, in letters, and in testimony during administrative proceedings. *Genier*, 606 F.3d at 49 (citing 20 C.F.R. § 404.1512(b)(3)). A claimant's symptoms can sometimes suggest a greater level of severity than can be shown by the objective medical evidence alone. SSR 96-7p. When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location,

duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating

factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve

symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the

claimant to relieve symptoms; and (7) any other factors concerning claimant's functional

limitations and restrictions due to symptoms.  20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3).

"An [ALJ] may properly reject [subjective complaints] after weighing the objective

medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but

must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the

determination is supported by substantial evidence.'"  *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651

(N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, Civ. No. 96-9435, 1999 WL 185253, at *5, 1999

U.S. Dist. LEXIS 4085, at * 15 (S.D.N.Y. Mar. 25, 1999) (citing *Aponte,* 728 F.2d 599; *Ferraris*,

728 F.2d 582).  "A finding that a [claimant] is not credible must . . . be set forth with sufficient

specificity to permit intelligible plenary review of the record."  *Williams,* 859 F.2d at 260-61

(citation omitted) (finding that failure to make credibility findings regarding claimant's critical

testimony undermines the Secretary's argument that there is substantial evidence adequate to

support his conclusion that claimant is not disabled).  "Further, whatever findings the ALJ makes

must be consistent with the medical and other evidence."  *Id*. at 261 (citation omitted) ("[A]n

ALJ must assess subjective evidence in light of objective medical facts and diagnoses.").

"Even where the administrative record may also adequately support contrary findings on

particular issues, the ALJ's factual findings 'must be given conclusive effect' so long as they are

supported by substantial evidence."  *Genier*, 606 F.3d at 49 (citing *Schauer v. Schweiker*, 675

F.2d 55, 57 (2d Cir. 1982)).  An ALJ's evaluation of a plaintiff's credibility is entitled to great

deference if it is supported by substantial evidence.  *Murphy v. Barnhart*, Civ. No. 00-9621 (JSR)

(FM), 2003 WL 470572 , at * 6, 2003 U.S. Dist. LEXIS 6988, at *29-30 (S.D.N.Y. Jan. 21,

2003) (citing *Bischof v. Apfel*, 65 F. Supp. 2d 140, 147 (E.D.N.Y. 1999));  *Bomeisl v. Apfel*, Civ.

No. 96-9718 (MBM), 1998 WL 430547, at *1, 1998 U.S. Dist. LEXIS 11595, at *19 (S.D.N.Y.

July 30, 1998) ("Furthermore, the ALJ has discretion to evaluate a claimant's credibility . . . and

such findings are entitled to deference because the ALJ had the opportunity to observe the

claimant's testimony and demeanor at the hearing.").

As to the symptom-related factors, the ALJ discussed Plaintiff's daily activities.  He

stated that Plaintiff was "going grocery shopping, doing laundry, visiting her grandmother, and

attending church."  (T. at 32.)  The ALJ also acknowledged that in March 2012, Plaintiff

attended a hockey tournament.  *Id*.  In a function report dated January 4, 2011, which the ALJ

discussed in his decision, Plaintiff could attend to her personal needs, prepare simple meals,

clean, wash dishes, manage money, use the Internet, and attend church weekly.  *Id*.  The ALJ

acknowledged Plaintiff had tenderness in her lower spine, mildly limited range of motion in her

cervical spine, and tenderness in her cervical spine.  (T. at 31.)  The ALJ conceded that Plaintiff

complained of numbness in her upper extremities, but also noted that an EMG/nerve conduction

study was normal.  *Id*.  The ALJ pointed out that Plaintiff suffered from adrenal insufficiency and

hypothyroidism, which could be precipitating or aggravating factors.  (T. at 27.)  The ALJ also

confirmed that Plaintiff had a history of chemical and environmental sensitivities as well.  *Id*.

However, the ALJ did not mention any medications Plaintiff was taking, nor did he

discuss the type, dosage, effectiveness, and side effects of those medications. The record indicates that Plaintiff was taking a number of pain medications as well as other medications including: Hydrocortisone, Fludrocordisone, Estradiol, Levothyroxine, Sertraline HCL, Solu-Cortef (PF), Cyclobenzaprine, and Naproxen. (T. at 297-98.) The ALJ also did not review any other treatment Plaintiff received to help relieve her symptoms. The record shows Plaintiff tried other treatments, but they were unsuccessful at relieving her symptoms. (T. at 435.) Plaintiff was referred to a pain specialist to help with her fibromyalgia and she was engaging in physical therapy. (T. at 455.) Physical therapy did not provide relief from her pain and only made her fatigue worse, so it was discontinued. *Id*.

As stated above, it was the ALJ's duty to consider the listed symptom-related factors. Although he reviewed a few of the factors, he did not discuss some highly relevant factors in light of her fibromyalgia diagnosis such as the significant medications Plaintiff took, other treatments she underwent to attempt to relieve her symptoms which, according to the records, did not work, and other measures taken by Plaintiff to relieve her symptoms.

The ALJ stated that "the record confirms the claimant's history of fibromyalgia, degenerative disc disease, and adrenal insufficiency." (T at 31.) These conditions in combination would reasonably be expected to produce pain. (T. at 31, 545, 555.) Thus, the ALJ was required to move on to the second step and consider the evidence of record regarding Plaintiff's pain. SSR 96-7p. Here, the ALJ did not fully consider some of the relevant factors in that regard, especially in light of Plaintiff's fibromyalgia condition. Instead, he found that the lack of objective medical evidence in combination with Plaintiff's daily activities made

13

Plaintiff's statements about the severity of her condition not credible. (T. at 31-32.)

Normally, an individual's statements about his or her pain are not enough by themselves to establish the existence of a physical or mental impairment, or to establish that the individual is disabled. SSR 96-7p. However, fibromyalgia is a unique disease. A growing number of courts, including the Second Circuit, have recognized that fibromyalgia is a disabling impairment and there are no objective tests which can conclusively confirm the disease. *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003). The absence of swelling joints or other orthopedic and neurologic deficits "is no more indicative that the patient's fibromyalgia is not disabling than the absence of a headache is an indication that a patient's prostate cancer is not advanced." *Id*. at 109 (citing *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996)). "In stark contrast to the unremitting pain of which [fibromyalgia] patients complain, physical examinations will usually yield normal results    a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions." *Lisa v. Sec'y of Dep't of Health & Human Servs.*, 940 F.2d 40, 45 (2d Cir. 1991) (quoting *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 817  18 (6th Cir. 1988)). "[T]he only symptom that discriminates between [fibromyalgia] and other diseases of a rheumatic character    [is] multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch." *Sarchet*, 78 F.3d at 306. SSR 12  2p sets forth the following requirements for finding that fibromyalgia is a medically determinable impairment: (1) a physician has diagnosed fibromyalgia; (2) the physician has provided evidence described either by the 1990 American College of Rheumatology (ACR)

criteria or the 2010 ACR Preliminary Diagnostic Criteria; and (3) the physician's "diagnosis is not inconsistent with other evidence in the person's case record." SSR 12 2p, 2012 WL 3104869, at *2 (July 25, 2012); *Casselbury v. Colvin*, No. 13-CV-6289 EAW, 2015 WL 1096399, at *10, 2015 U.S. Dist. LEXIS 31223 (W.D.N.Y. Mar. 13, 2015).

Plaintiff meets the American College of Rheumatology criteria for fibromyalgia according to Lori Anderson, M.D., Plaintiff's treating physician. (T. at 859.) There is no evidence to the contrary in the record. Because of this, the ALJ should have assessed Plaintiff's credibility by including further consideration of her subjective statements of pain, discomfort, and fatigue considering her fibromyalgia. Yet, the ALJ stated "the claimant's physical conditions have existed prior to the alleged onset date of disability, and she was able to work with these conditions without a significant worsening in clinical findings since her alleged onset date." (T. at 31.) The ALJ stated "despite complaints of numbness in her upper extremities, an EMG/nerve conduction study from May 2009 was deemed normal." *Id*. He also stated, "orthopedic records indicated that x-rays of the claimant's cervical spine from March 2009, when compared to diagnostic images from 2003, showed no significant changes." *Id*.

However, the record indicates that Plaintiff did still suffer from pain and fatigue during the time in which the ALJ states Plaintiff reported no musculoskeletal symptoms. (T. at 416, 435, 441-44.) The same report to which the ALJ refers where Plaintiff stated she has no musculoskeletal symptoms also states Plaintiff "was recently see[n] in to Upstate ER due to migraine, shakiness inability to function or even talk." (T. at 918.) Plaintiff's medical exam by Dr. Anderson was normal. (T. at 919.) Nevertheless, Dr. Anderson did comment that she would

refill Plaintiff's hydrocortisone shot.  *Id*.  Although the ALJ declined to give Dr. Anderson's opinion controlling weight, other physicians have also stated that Plaintiff's symptoms and consistent pain issues are probably due to her fibromyalgia.  (T. at 316.)  John Parker, M.D., of Syracuse Orthopedic Specialists stated Plaintiff experienced tenderness over both knees, and "I suspect her fibromyalgia plays a role in this issue," despite the fact her gait and coordination were normal.  *Id*.  A report from SUNY Upstate Medical from October 14, 2011, stated she "has episodes of shivering spasms of her muscles, profound fatigue."  (T. at 976.)  Thus, during the relevant period, Plaintiff did have pain and fatigue with normal medical tests, consistent with fibromyalgia.

The ALJ gave "great weight" to the opinion of Roberto Rivera, M.D., a consulting physician.  (T. at 30.)  Yet, Dr. Rivera agreed that Plaintiff is afflicted with adrenal insufficiency, fibromyalgia, osteoarthritis, chronic fatigue syndrome, degenerative disc disease in cervical spine and back, hypothyroidism, chronic migraine headaches, and multiple food allergies and environment sensitivities.  (T. at 828.)  On remand when assessing Plaintiff's credibility, the ALJ should review all of Plaintiff's symptom-related factors, and specifically include a review of the issue of objective medical evidence in fibromyalgia cases and how that may affect the assessment of Plaintiff's credibility.

### B.    Opinion Evidence and the RFC Determination

When determining Plaintiff's RFC, the ALJ gave limited weight to the opinion of treating physician Dr. Anderson because he found that her opinions are contradicted by her treatment notes and evidence in the record.  (T. at 30.)  Instead, as noted above, the ALJ gave great weight

to the opinion of examining consultant Dr. Rivera because it was found to be consistent with the evidence in the record indicating that despite a long history of adrenal insufficiency, degenerative disc disease, and fibromyalgia, Plaintiff was capable of working with these conditions. *Id.*

Plaintiff argues the ALJ erred by giving treating physician Dr. Anderson only limited weight, and not controlling weight. (Dkt. No. 16 at 10-12.) Defendant argues the ALJ properly weighed the medical opinion evidence in light of Plaintiff's described daily activities. (Dkt. No. 21 at 7.) For reasons stated below, the Court finds the ALJ erred in assigning limited weight to Dr. Anderson's opinion because he relied only on Plaintiff's description of her daily activities and the lack of objective evidence, and did not give good reasons for assigning limited to weight to Dr. Anderson's opinion.

The medical opinions of a treating physician are given "controlling weight" as long as they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are not inconsistent with other substantial evidence contained in the record. 20 C.F.R. § 404.1527(d)(2).

"An ALJ who refuses to give controlling weight to the medical opinion of a treating physician must consider various 'factors' to determine how much weight to give to the opinion." *Halloran v. Barnhart,* 362 F.3d 28, 32 (2d Cir. 2004). These factors include: (1) the length of the treatment relationship and frequency of examinations; (2) the nature and extent of treatment relationship; (3) the medical evidence in support of the opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(1)-(6).

The Regulations require the Commissioner's notice of determination or decision to "give good reasons" for the weight given a treating source's opinion.   20 C.F.R. § 404.1527(d)(2). Failure to provide "good reasons" for not crediting the opinion of a claimant's treating physician is a ground for remand.  *Snell v. Apfel,* 177 F.3d 128, 133 (2d Cir. 1999); *Halloran,* 362 F.3d at 32-33.  An ALJ should not rely heavily on the findings of consultative physicians after a single examination.  *Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013).

In this case, the ALJ's decision to disregard Dr. Anderson's opinion was based entirely on his failure to recognize fibromyalgia's lack of objective evidence and Plaintiff's description of her daily activities.  (T. at 30.)  The ALJ stated that, "the claimant maintained a broad range of daily activities that is consistent with light work."  (T. at 32.)  However, the ALJ failed to mention that in the same Function Report he cites, the Plaintiff stated she has lost dexterity and strength in both hands, she cannot stand for any length of time, she has trouble with stairs due to knee pain, and, while she used to ski, hike and jog, she is now pleased if she can take a short walk.  (T. at 232-40.)  Plaintiff also states in the same report that although she does do some grocery shopping and laundry, and attends church, what she does during the day depends greatly on how she feels that day.  *Id*.  Her tenants do her yard work, family and friends cook for her, she does laundry once every 1-2 weeks, she does dishes every couple of days, and only prepares hot meals once a week.  *Id*.  Indeed, it is well-settled that the performance of basic daily activities does not necessarily contradict allegations of disability, "as people should not be penalized for enduring the pain of their disability in order to care for themselves."  *Woodford v. Apfel*, 93 F. Supp. 2d 521, 529 (S.D.N.Y.2000);  *see also Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998);

*Valet v. Astrue*, No. 10 CV 3282 (KAM), 2012 WL 194970, at \*19, 2012 U.S. Dist. LEXIS 7315 (E.D.N.Y. Jan. 23, 2012). The Court finds that the ALJ incorrectly penalized Plaintiff for doing some basic activities, which often do not occur daily and depend upon how she feels on any particular day. (T. at 232-40.)

As to the first and second factors, Dr. Anderson has been treating Plaintiff since the late 1990's, and Plaintiff frequents her office and has most of her medical records sent to Dr. Anderson if she does go to a specialist. (T. at 66, 397-463.) Instead of crediting Dr. Anderson's opinion, the ALJ gave Dr. Rivera's opinion great weight because "it is consistent with the evidence in record." (T. at 30.) However, Dr. Rivera had no treatment relationship with Plaintiff since she only saw him for purposes of these proceedings. (T. at 829.) Although the ALJ focuses on Dr. Rivera's opinion, it should be noted that Dr. Rivera agrees that Plaintiff suffers from fibromyalgia. (T. at 828.) While Dr. Rivera states Plaintiff has no limitations sitting, standing or walking and mild limitations on lifting, carrying, pushing, and pulling, Dr. Anderson's opinion about Plaintiff's diagnosis of fibromyalgia is not contradicted by Dr. Rivera's opinion. (T. at 829.)

As to the third factor, the ALJ rejects Dr. Anderson's opinion because of a lack of objective medical evidence corroborating her statement that Plaintiff is disabled, and she is limited to lifting ten pounds occasionally, sitting for less than two hours in an eight-hour workday, and standing and/or walking for less than two hours in an eight-hour workday. (T. at 30.) In this case as set forth above, there may be a lack of objective medical evidence due to the special nature of fibromyalgia. However, Plaintiff's subjective complaints as reviewed in the

medical evidence fully corroborates Dr. Anderson's medical findings. (T. at 437.) As discussed above, it was error requiring remand because the ALJ relied on a lack of objective medical evidence alone when Plaintiff suffers from fibromyalgia. *Green-Younger*, 335 F.3d at 108. As the court in *Green-Younger* noted, reliance on subjective complaints "hardly undermines [the doctor's] opinion as to [the claimant's] functional limitations." *Id.* at 107. Therefore, it was error for the ALJ to completely reject the treating physician's functional limitations solely because they were based upon subjective complaints.

As to the fourth factor, the ALJ rejected Dr. Anderson's opinion because he found it internally inconsistent with Plaintiff's daily activities and again because of the lack of objective medical evidence. (T. at 30.) Dr. Anderson's medical opinion that Plaintiff has fibromyalgia, as well as several other impairments, and thus cannot do certain activities, is consistent with the record, as well as with other physicians' opinions. The ALJ points to several normal test results, but as stated above this does not undermine Dr. Anderson's findings because Plaintiff exhibits the clinical signs and symptoms of fibromyalgia. *Id.*; *see also* T. at 859. As noted, crediting Plaintiff's subjective complaints does not undermine Dr. Anderson's diagnostic findings. *See Green-Younger*, 335 F.3d at 107 ("[a] patient's report of complaints, or history, is an essential diagnostic tool."); *see also Flanery v. Chater,* 112 F.3d 346, 350 (8th Cir. 1997).

Additionally, Dr. Parker is an orthopedic specialist, and he opined much of Plaintiff's knee pain, which was her reason for the appointment, was most likely due to the fibromyalgia. (T. at 316.) Saad G. Sobhy, M.D., of Sobhy Electrodiagnostic & Pain Medicine, also opined that Plaintiff suffered from fibromyalgia pain syndrome, as well as radicular low back pain syndrome,

cervical radiculitis, and zygapophyseal joint pain syndrome involving the thoracolumbar spine bilaterally.  (T. at 328.)  The ALJ dismissed Dr. Anderson's opinion without a proper and complete analysis by giving it limited weight, and he gave a consultative, non-treating examiner's opinion great weight.  (T. at 29-31.)  The ALJ erred under the circumstances, and the matter should be remanded for the ALJ to properly review treating physician Dr. Anderson's opinion, especially in view of Plaintiff's fibromyalgia condition.

**WHEREFORE,** it is hereby

**RECOMMENDED**, that this matter be remanded to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g),[4] for further proceedings consistent with the above.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.


Dated: August 10, 2015
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[4]    Sentence four reads "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).